**UNITED STATES of America, Appellee,**
v.
**Ariel POMARES and Antonio Veciana,
Defendants-Appellants.**

**No. 1127, Docket 74-1219.**

United States Court of Appeals,
Second Circuit.

Argued June 14, 1974.

Decided July 5, 1974.

Bancroft Littlefield, Jr., Asst. U. S. Atty. (Paul J. Curran, U. S. Atty., S. D. N. Y., and S. Andrew Schaffer, Asst. U. S. Atty., on the brief), for appellee.

Henry J. Boitel, New York City (Barry L. Garber, Miami, Fla., and Abraham H. Brodsky, New York City, on the brief), for defendants-appellants.

Before LUMBARD, HAYS and TIM-BERS, Circuit Judges.

LUMBARD, Circuit Judge:

After a five-day trial in the Southern District before Judge Bonsal and a jury, Ariel Pomares and Antonio Veciana were convicted on January 14, 1974 on both counts of an indictment which charged them with conspiracy to distribute narcotics and possess them with intent to distribute, and with the distribution of approximately seven kilograms of cocaine. 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), and 846. Pomares was sentenced to concurrent terms of five years on each count, to be followed by a special parole term of three years. Veciana received concurrent terms of im-

prisonment of seven years on each count, also to be followed by a special parole term of three years.

On appeal, the defendants make several points, the two principal ones being that Pomares' confession to government agents was involuntary and that the government waived its right prior to trial to introduce into evidence portions of Pomares' confession. We affirm.

The evidence at trial established that the two defendants, along with a co-conspirator who pleaded guilty, Augustin Barres, organized a cocaine smuggling ring which succeeded in smuggling twenty-five kilograms of pure cocaine into the United States from Bolivia before Barres was finally arrested while delivering seven kilograms to an undercover agent on July 23, 1973. Barres' role in the conspiracy was to help finance the purchase of the cocaine. Veciana was responsible for travelling to Bolivia, purchasing the drugs and delivering them to Bolivian diplomats who then smuggled them into the United States, while Pomares had the task of arranging sales in the United States. All three were experienced businessmen who had fled to Florida from Cuba after Castro had come to power.

After Barres' arrest, he agreed to cooperate with the government. On the basis of information which he provided, Veciana was arrested in Miami on July 24, 1973 and Pomares was arrested at his home in Puerto Rico on July 29, 1973.

Upon his arrest, Pomares was advised of his rights in Spanish by Special Agents Pinol and Amador. He was then taken to the Drug Enforcement Administration office in San Juan where, prior to questioning, he was again advised of his rights by Agent Pinol. After being advised of his rights on each of these occasions, Pomares was told that he faced heavy penalties for his smuggling activities, that he was his own best lawyer, and that the wisest course of action would be to cooperate with the government rather than exercise his right to remain silent. Pomares agreed to coop-

erate, and confessed twice. On the second of these occasions, Agent Pinol took handwritten notes of what was being said. These notes were eventually put into the form of a typewritten report and introduced as an exhibit in the suppression hearing held by Judge Bonsal to determine the admissibility of Pomares' confession at trial. Judge Bonsal ruled that Pomares' confession was admissible.

On October 4, 1973, during a pretrial conference, the attorney for Veciana raised the issue of "a potential severance problem under *Bruton* since one of the defendants [Pomares] did give a statement and the other one [Veciana] did not." Assistant United States Attorney Bannigan responded: "I can resolve that right now. We will not use the statement."

At trial, the government took the position that it had only waived use of the written statement in order to avoid the *Bruton* problem, but that it had recently learned that Pomares had made an earlier confession, and that Special Agent Pinol was prepared to testify as to this earlier oral confession. Defense counsel objected that the government had waived its right to introduce any confession and in any event both confessions were essentially one and the same, having been obtained within no more than three hours of each other on the same day. Judge Bonsal concluded that the waiver did not reach to the earlier oral confession. In order to avoid any *Bruton* problem, however, the court ruled that only those portions of Pomares' confession could be introduced which dealt with events after Veciana had delivered the last shipment of cocaine. Thus so much of the statement as was admitted in evidence made no mention of Veciana or any transactions in which he participated.

I.

On appeal, Pomares and Veciana maintain that Pomares' confession was involuntarily obtained and therefore should not have been admitted in evi-

dence. They argue that the comments of the special agents who arrested Pomares that he faced severe penalties, that he was his own best lawyer, and that full cooperation with the government would be the best course were improper and coerced the defendant into confessing.

We emphasized in United States v. Ferrara, 377 F.2d 16, 17 (2d Cir.), cert. denied, 389 U.S. 908, 88 S.Ct. 225, 19 L. Ed.2d 225 (1967), that

the test of voluntariness [of a confession] is whether an examination of all the circumstances discloses that the conduct of "law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined . . . ." Rogers v. Richmond, 365 U.S. 534, 544, 81 S.Ct. 735, 741, 5 L. Ed.2d 760 (1961) . . . .

■ The circumstances here do not disclose any overbearing on the part of government agents. There is no dispute that after his arrest and prior to making his oral confession, Pomares was advised three times in his native language, Spanish, of his constitutional rights and in response indicated that he understood them. The *Miranda* warning was given twice at his house after his arrest, once by Agent Amador and once by Agent Pinol, and the third time at the Drug Enforcement Administration office by Agent Pinol.

Nor is there any evidence that Pomares was subject to any threats, physical coercion, or protracted interrogation. Indeed, his arrest and arraignment, occurring on a Sunday, were carried out in an expeditious fashion. He was arrested at approximately 12:15 p. m., brought to the Drug Enforcement Administration office by 1:30 and arraigned before the Chief Judge for the District of Puerto Rico at the Chief Judge's home between 4:00 and 5:00 p. m. the same day. *See* United States v. Drummond, 354 F.2d 132, 144 (2d Cir. 1965) (en banc), cert. denied, 384 U.S. 1013, 86 S. Ct. 1968, 16 L.Ed.2d 1031 (1966).

No specific promises were made to Pomares. He was simply informed that it would be to his benefit to cooperate. Such statements by law enforcement officials have not been considered overbearing. *See, e.g.,* United States v. Williams, 479 F.2d 1138 (4th Cir.), cert. denied, 414 U.S. 1025, 94 S.Ct. 452, 38 L.Ed.2d 317 (1973); United States v. Glasgow, 451 F.2d 557 (9th Cir. 1971). In United States v. Ferrara, *supra,* 377 F.2d 16, we held that the confession was voluntary even though federal agents had gone beyond simply urging the defendant to cooperate and had promised that he would be released on bail if he confessed. *See also* United States v. Bailey, 468 F.2d 652, 672–674 (4th Cir. 1972), aff'd on other grounds, 480 F.2d 518 (5th Cir. 1973) (en banc).

Finally, it cannot be overlooked that Pomares is an intelligent, experienced businessman, aged 37 years, who was fully aware of his situation, having been informed by the agents that he had been arrested for violating the "Federal Narcotics Law." Indeed, the record reveals that he was already aware at the time of his arrest that his coconspirator, Barres, had been arrested. In light of all the circumstances, Judge Bonsal was correct in ruling that Pomares' confession was voluntary.

Surely, it is the duty of law enforcement officers to assemble all available evidence relating to the commission of a crime and this includes such information as a participant may be willing to give. Having fairly and fully advised Pomares of his constitutional rights, as required by *Miranda,* the agents were free to discuss with Pomares the reasons why he should cooperate. It was quite proper in the course of such discussion to mention the situation which Pomares faced and the advantages to him if he assisted the government. The agents stated facts; they made no misrepresentations. Nothing the agents were shown to have said or done was unfair or overreaching. There was every reason for the agents to act as they did; their conduct did not violate the letter or the spirit of the

holding of the Supreme Court in *Miranda*.

■ The appellants' argument that the government waived its right to use Pomares' confession in evidence is also without merit. Judge Bonsal, who was present at the pretrial conference at which the waiver was made, concluded that the waiver was not intended to go so far as to include the prior oral confession. In any event, it was within the discretion of the trial judge to admit testimony as to this earlier oral confession, and under the circumstances it was not an abuse of discretion to do so.

■ Moreover, it is difficult to see how the government could have waived its right to introduce this prior oral confession, since it only learned about it at trial when Agent Pinol arrived from Puerto Rico and informed the prosecutor that there had been an earlier confession.

Nor could the defendants have been surprised by the use of the confession at trial since they were already fully aware of the substance of the admissions made by Pomares, which he had never denied. In fact, the defendants had ample opportunity to challenge the admissibility of Pomares' confession at a suppression hearing conducted during the trial and did so. At the conclusion of that hearing Judge Bonsal held that Pomares' confession was admissible.

Under the circumstances which disclose neither bad faith on the part of the government nor surprise to the defendants, there is no reason to conclude that Judge Bonsal abused his discretion in admitting testimony regarding Pomares' oral confession. *See* United States v. Cirillo, 499 F.2d 872, 881–883 (2d Cir. 1974). It is particularly noteworthy that Judge Bonsal took great care to comply with the *Bruton* rule by having excluded those portions of Pomares' confession dealing with Veciana.

The several other arguments urged by Pomares and Veciana on appeal are also without merit.

Affirmed.