UNITED STATES of America, Appellee,

v.

Kendall ISOM, Appellant.

No. 269, Docket 78–1213.

United States Court of Appeals, Second Circuit.

Argued Oct. 13, 1978.

Decided Nov. 29, 1978.

Brian C. Baker, Greenfield & Baker, New York City, for appellant.

Richard F. Ziegler, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty. for the Southern Dist. of New York, Howard W. Goldstein, Asst. U. S. Atty., New York City, of counsel), for appellee.

Before LUMBARD and OAKES, Circuit Judges, and WERKER, District Judge.*

* Of the Southern District of New York, sitting by designation.

OAKES, Circuit Judge:

After being unsuccessful on a motion to suppress, appellant pleaded guilty in the United States District Court for the Southern District of New York, Whitman Knapp, Judge, to one count of possession of an unregistered firearm (a sawed-off shotgun) and three counts of unlawful possession of firearms by a convicted felon. By the consent of the Government he appeals the two issues determined adversely to him on his motion to suppress. *See United States v. Faruolo*, 506 F.2d 490 (2d Cir. 1974). Appellant maintains that the court should have suppressed the seized weapons because of Fourth Amendment violations and his post-arrest statements because of Fifth Amendment and Fed.R.Crim.P. 5(a) violations. We conclude that Judge Knapp's findings, which largely turned on the credibility of the witnesses, were not clearly erroneous. The convictions therefore must be affirmed.

The factual framework underlying this appeal is as follows. One Debra Ames permitted appellant, a brother of the father of one of her children, to stay at her apartment from time to time. When she entered her apartment on the morning of November 3, 1977, Ames found appellant there and found a bullet hole or shotgun blast in the refrigerator door. She was soon embroiled in an argument and a somewhat violent fight with him. Ames left the apartment with her baby and telephoned the police on their 911 emergency line from a neighbor's apartment, informing them that she had just had a fight with appellant and that he had a gun or guns. Ames met the police outside her apartment building and together they went inside and rang the doorbell; appellant opened the door. The police entered the apartment, handcuffed appellant, and searched the apartment for weapons.

They found one sawed-off shotgun in a pillow and another, along with four other guns, in a metal strongbox under a bed. At the suppression hearing Ames and appellant testified that the police attacked and beat him during the search.

The police took appellant to the station house, and federal agents arrived to arrest him at about 2:30 p. m. The agents took appellant to headquarters for routine processing. One agent testified that he twice advised appellant of his *Miranda* rights,[1] and appellant then made some incriminatory statements. At 5:30 p. m., the agents transported appellant to the Metropolitan Corrections Center (MCC); appellant then asked to see a doctor and was taken to Bellevue where he received a medical examination of sorts. He was returned to MCC at about 8:00 p. m. The next morning, federal agents took appellant to the United States Attorney's office where an Assistant United States Attorney advised him of his rights and then elicited admissions from him. Appellant was arraigned before a magistrate at 1:45 p. m.

■ Appellant first contends that the warrantless police search of the apartment in which he was arrested, and the subsequent seizure of six weapons, violated his Fourth Amendment rights. The trial court justified the search on the basis of Ames's consent.[2] Because Judge Knapp was warranted in finding that Ames both consented to the search and had authority to consent, we hold that the search and seizure did not violate appellant's Fourth Amendment rights.

■ As the lawful tenant, Ames clearly had authority to consent to a search of her premises, even though a "guest" was also present. *See United States v. Novick*,

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *see generally* Stone, *The Miranda Doctrine in the Burger Court*, 1977 The Sup.Ct.Rev. 99.

2. The Government also contends that "exigent circumstances" justify the warrantless search. *See generally United States v. Campbell*, 581 F.2d 22 (2d Cir. 1978). Of course, that argument would not justify the search of the locked box made after appellant was secured by handcuffs; at most it would permit the seizure of the box until a search warrant were obtained. *See United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). Because we hold that other reasons justify the search even in the absence of a warrant, however, it is unnecessary to resolve this issue.

450 F.2d 1111 (9th Cir. 1971), *cert. denied,* 405 U.S. 995, 92 S.Ct. 1271, 31 L.Ed.2d 464 (1972); *see also United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); *Frazier v. Cupp,* 394 U.S. 731, 740, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969). Indeed, even if appellant had some right, doubtful at best, as a "licensee" to countermand Ames's consent to the search, Ames had undoubtedly revoked the "license" by asking appellant to leave her apartment.

■ Judge Knapp's finding that Ames consented to the search is supported by the evidence and is not clearly erroneous. *See United States v. Bronstein,* 521 F.2d 459, 463 (2d Cir. 1975), *cert. denied,* 424 U.S. 918, 96 S.Ct. 1121, 47 L.Ed.2d 324 (1976). As recounted above, Ames called the police to say that she had had a fight with appellant in her apartment and that he had a gun or guns. Ames was waiting outside the apartment for the police when they arrived; they rang the apartment doorbell; and when appellant opened the door, Ames identified him as the man who had assaulted her. Judge Knapp found that the phone call constituted an invitation to the police to find the guns. There is ample support for this finding including the plain import of the call itself. Ames testified that she wanted the weapons removed; she did not know the number or location of the weapons; she was present at the search and did not object to the officers' entry into the apartment and commencement of the search; and she did not ask the officers to leave even after they allegedly began smashing her furniture.

■ A troublesome issue, however, remains. Although it is sufficiently clear that Ames consented to the search of the premises with authority to do so, it is less clear that she had authority to consent to the forcible opening of the locked metal box, found under the bed, which contained several weapons. If that box belonged to appellant, then he had a colorable Fourth Amendment interest in keeping its contents private, even though he was only a guest in her apartment. *Cf. United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d

538 (1977) (warrantless search of footlocker forbidden absent exigent circumstances, even though police seized locker and arrested defendants in public place); *United States v. Pravato,* 505 F.2d 703 (2d Cir. 1974) (leaving open question whether third party's consent to search of room carries with it consent to search defendant's suitcase). Guests have a justifiable expectation under *Katz v. United States,* 389 U.S. 347, 83 S.Ct. 507, 19 L.Ed.2d 576 (1967), that the contents of locked articles that they bring to the host's premises will remain private. This justifiable expectation should not be vitiated by a strained application of the third-party consent doctrine; the consent of the host should ordinarily be insufficient to justify a warrantless search when it is obvious that the searched item is the exclusive property of the guest. If the police wish to search such an article, then under *Chadwick, supra,* they may seize it upon probable cause, which they surely had here once the sawed-off shotgun was discovered in the pillow; they may then search the box after they have obtained a warrant.

■ But appellant never asserted ownership of the box. As far as the police were concerned Ames's authority to consent to the search extended to the box. Appellant testified that the police "grabbed the box and asked me what is this. I told them I don't know. He said, do you have a key? I said no." In other words appellant did not claim the box as his own and object to the search. In any event, the police might reasonably conclude that appellant did not own the box and that Ames's consent included within its scope the search of the box. Viewing the evidence in the light most favorable to the Government, as we must in reviewing a denial of a motion to suppress, *see United States v. Oates,* 560 F.2d 45, 49 (2d Cir. 1977), we hold that the Government here satisfied its burden of proving by the preponderance of the evidence that the weapons were seized pursuant to a valid consent. *See Lego v. Twomey,* 404 U.S. 477, 488–89, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972).

Appellant secondly objects that his post-arrest statements were inadmissible because they were involuntary, in violation of the Fifth Amendment, and because they were made during a period of unnecessary prearrangement delay proscribed under Fed. R.Crim.P. 5(a). We find each objection to be without merit.

■ First, to establish a Fifth Amendment violation, appellant must show that he did not effectively waive his *Miranda* rights or that his statements were involuntary because they were not " 'the product of a rational intellect and a free will,' " *Mincey v. Arizona,* 437 U.S. 385, 398, 98 S.Ct. 2408, 2417, 57 L.Ed.2d 290 (1978), *quoting Townsend v. Sain,* 372 U.S. 293, 307, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). With respect to *Miranda* warnings, appellant concedes that the special federal agents and the Assistant United States Attorney advised him of his rights two or three times. But appellant complains that the reading was not accompanied by elaboration and explanation and maintains that he did not understand his rights. Elaboration, however, is not required. Moreover appellant expressed his understanding of his rights as they were read to him, signed the waiver of rights form, and had had rather considerable prior experience with law enforcement officers. Thus Judge Knapp's finding that appellant understood his rights is not clearly erroneous. *See United States v. Boston,* 508 F.2d 1171, 1175 (2d Cir. 1974), *cert. denied,* 421 U.S. 1001, 95 S.Ct. 2401, 44 L.Ed.2d 669 (1975).

■ Appellant's residual Fifth Amendment claim is, in essence, that his statements were not voluntary because he was suffering from a beating that he had received from the New York City police.[3] During the course of the routine processing at federal headquarters appellant complained that his arm hurt, but he did not request medical attention until after he gave his first statement. The extent of appellant's injuries is unclear from the record.[4] But when the Assistant United States Attorney asked appellant if he had any current medical problems, appellant replied in the negative, although he later said that the New York City police had beaten him "half to death." Judge Knapp found that the statements were wholly voluntary and that appellant was not in bodily pain when he made his statements. Because these findings rest on the credibility of the witnesses, we cannot say that they are clearly erroneous.

■ Finally, appellant contends that the statements should have been suppressed because of unnecessary prearrangement delay proscribed by Fed.R.Crim.P. 5(a) and 18 U.S.C. § 3501. Even if valid, this objection would provide a basis for suppressing only the second statement which appellant made to the Assistant United States Attorney; appellant made the first statement within two hours of his arrest. And appellant's second statement, even though made about twenty hours after his arrest, did not follow any period of unnecessary delay. The period during which appellant received medical treatment (at his request) and overnight lodging at the MCC should not be counted in computing unnecessary delay, *see United States v. Marrero,* 450 F.2d 373, 378 (2d Cir. 1971), *cert. denied,* 405 U.S. 933, 92 S.Ct. 991, 30 L.Ed.2d 808 (1972). Thus, appellant's second statement was in effect made no more than four and a half hours after

---

3. Appellant claims that other factors also contributed to the involuntariness of his statements, Appellant's Brief at 19, but the claim is implausible. The record does not support his assertions that he was illegally arrested and denied access to counsel. And the hospital visit, prearrangement delay, and interview with the Assistant United States Attorney at best suggest that he might have been under some stress, not that his will was overborne.

4. It appears from the testimony at the suppression hearing and the documentary evidence that appellant had small nontender scratches on his upper body, which Ames could have inflicted, and a slightly swollen testicle. Appellant, however, refused to permit the doctor at Bellevue to take X-rays and several witnesses testified that there were no marks on his body that would indicate that he had been beaten. Police pictures taken of him at MCC were not introduced into evidence nor did the police testify.

his federal arrest,[5] a period within the limits of 18 U.S.C. § 3501(c), which provides, *inter alia*, that a voluntary confession obtained within six hours of arrest shall not be inadmissible solely because of prearraignment delay.[6] Although the arraignment occurred more than twenty-three hours after the federal arrest, we conclude that the delay was not "unnecessary" within the meaning of Fed.R.Crim.P. 5(a) and 18 U.S.C. § 3501(c). Our holding in no way, however, is intended as a qualification upon the decision in *United States v. Duvall*, 537 F.2d 15, 23–24 & n.9 (2d Cir.), *cert. denied*, 426 U.S. 950, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976), that "prosecutors engaging in [the] practice [of conducting a second interrogation for incriminating purposes shortly before arraignment] must be particularly scrupulous to observe the cautions of *Miranda* . . . ."

We therefore affirm Judge Knapp's finding that appellant was not subjected to unnecessary prearraignment delay.

Affirmed.

---

5. The Government's Brief, at 22, asserts that the entire four and a half hour period—three hours with the special agents the afternoon of appellant's arrest and less than one and a half hours the next morning being fingerprinted and awaiting an interview with the Assistant United States Attorney—involved routine processing and thus does not enter into the calculation of unnecessary delay. We need not accept this characterization of the period in order to find that the delay in this case was reasonable and that it complies with 18 U.S.C. § 3501(c).

6. In any criminal prosecution by the United States or by the District of Columbia, a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law-enforcement officer or law-enforcement agency, shall not be inadmissible solely because of delay in bringing such persons before a magistrate or other officer empowered to commit persons charged with offenses against the laws of the United States or of the District of Columbia if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest or other detention: *Provided,* That the time limitation contained in this subsection shall not apply in any case in which the delay in bringing such person before such magistrate or other officer beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate or other officer.

18 U.S.C. § 3501(c).