**UNITED STATES of America, Plaintiff,**

v.

**Dennis J. GUARNO, Defendant.**

**No. 86–CR–11.**

United States District Court,
N.D. New York.

May 12, 1986.

Frederick J. Scullin, U.S. Atty., Northern District of N.Y., Syracuse, N.Y., (Joseph A. Pavone, Asst. U.S. Atty., of counsel), for plaintiff.

Frank Policelli, Utica, N.Y., for defendant.

McAVOY, District Judge.

### MEMORANDUM–DECISION AND ORDER

On January 16, 1986, Dennis J. Guarno, the defendant herein, was arrested and charged with various violations of federal law relating to the possession and transfer of firearms.[1] The defendant subsequently moved to suppress certain evidence against him, to wit a signed, written confession and

---

1. The indictment in this case charges the defendant with three counts of possession of unregistered firearms in violation of 26 U.S.C. § 5861(d), two counts of possession of firearms by a convicted felon in violation of 18 U.S.C. § 922(h), and one count of transferring a firearm without the approval of the Secretary of the Treasury in violation of 26 U.S.C. § 5861(e).

firearms and ammunition recovered from the defendant's car prior and subsequent to his arrest. On March 26, 1986, this Court held an evidentiary hearing on the defendant's motion. On the basis of the evidence adduced at that hearing, as well as the arguments of counsel, this Court hereby denies the defendant's motion in its entirety.

## FACTS

On the morning of November 26, 1985, the defendant was driving his car in Utica, New York, when he was signalled by the car behind him to pull over. The defendant was then approached by the occupants of that car who identified themselves as Agents Walter T. Bleyman and Michael Plunkett of the United States Treasury Department, Bureau of Alcohol, Tobacco and Firearms. Agents Bleyman and Plunkett indicated that they wished to speak with the defendant in a private place and asked the defendant to follow them in his car. The defendant agreed to speak with the agents and followed them to the Gateway Motel where the agents had reserved a room. At no time during this initial conversation with the agents was the defendant told that he was under arrest or that he had to follow the agents.[2]

Prior to entering the motel, the defendant again asked to see Agent Plunkett's credentials. After inspecting the credentials, the defendant and Agents Bleyman and Plunkett proceeded to a room in the motel. The defendant was then told that the agents wished to gain his cooperation in connection with an investigation of several individuals suspected of violations of federal firearms laws. In this regard, the agents told the defendant that they wanted him to wear a wiretap and attempt to engage several individuals in discussions relating to firearms and a recent bombing in the Utica area.

At first, the defendant was hesitant to agree to assist the agents. The agents then told the defendant that they had evidence of the defendant engaging in criminal activity on November 23, 1984.[3] After the defendant was permitted to examine Agent Bleyman's case file describing the evidence against the defendant, the agents indicated that although a conviction based upon the defendant's activities on November 23, 1984 could result in the imposition of a ten to fifteen-year sentence, they were authorized to give the defendant an opportunity to plead guilty to a charge carrying a five-year maximum sentence in exchange for the defendant's cooperation in connection with the agents' investigation of other individuals. After considering this offer for approximately ten minutes, the defendant agreed. He then signed a written statement prepared by the agents wherein

---

2. Both the defendant and Agent Bleyman testified that, at the time the defendant was stopped in his car, two other law enforcement agents in another car were in the vicinity. There was conflicting testimony regarding the proximity of the other agents' car to the defendant's car at this time and on the way to the motel. The defendant testified that the other car was immediately behind him on the way to the motel and that this led him to believe that he could not refuse to follow Agents Bleyman and Plunkett to the motel. Agent Bleyman testified that he was not sure of the exact location of the other agents' car but knew that it was somewhere behind the defendant. Regardless of the location of the other car, this Court is not convinced that the defendant believed that he could not turn away from Agent Bleyman's car and refuse to follow the agents. Such a belief would have been totally unjustified under the circumstances.

3. On November 23, 1984, the defendant allegedly met another individual in the parking lot of the Holiday Inn in New Hartford, New York. At that time, the other individual was acting as a government informant. There was an electronic recording device in the car where the defendant and the informant met. In addition, the meeting was being videotaped from a room in the hotel. During the meeting, the defendant allegedly transferred a semi-automatic pistol with a silencer to the informant. The serial number on the pistol had been obliterated and the silencer was not registered to the defendant. Moreover, by law, the defendant, a three-time convicted felon, was not permitted to have firearms in his possession. This entire transaction was electronically recorded and videotaped.

he admitted that he had engaged in criminal activity on November 23, 1984.

The defendant was then asked by Agent Bleyman if he had any weapons in his car and if he did, would he turn them over to the agents. The defendant indicated that he did have weapons in the car and that he would turn them over. Agent Bleyman then accompanied the defendant to the defendant's car whereupon the defendant opened the trunk of the car, pulled out a large paper bag, and handed the bag to Agent Bleyman. After returning to the motel room, Agent Bleyman opened the bag and discovered a Charter Arms AR–7 Explorer .22 caliber sawed-off rifle with the serial number obliterated, a silencer attached to the rifle, and a Ruger MKII .22 caliber semi-automatic pistol with the serial number obliterated. The defendant then executed a form surrendering possession and ownership of the weapons to the United States Department of Treasury. In response to the defendant's inquiry, the agents told the defendant that he would not face additional charges because of his possession of the weapons on that date so long as the defendant honored his agreement to cooperate with the agents. The defendant then shook hands with the agents and left.

The entire interview of the defendant lasted approximately two to three hours. During that entire time, the defendant was never told that he was under arrest. He was made to feel comfortable, was offered food, coffee and cigarettes, was permitted to go to the bathroom and to call his wife on request. The defendant has testified that after being asked to cooperate with the agents and after being informed of the evidence against him, he asked to see a lawyer. Agent Bleyman testified that the defendant never asked to see a lawyer but that he informed the defendant at the outset of their meeting that if the defendant wished to speak with a lawyer, the agents were not interested in his cooperation. Agent Bleyman further testified that although the agents never read the defendant his rights, they indicated at the outset of the meeting that the defendant was free

to leave whenever he wanted and that the agents had no intention of arresting the defendant that day. The defendant denies ever being told by the agents that he was free to leave when he wanted but testified that he never attempted to leave.

Three days after the agents interviewed the defendant, counsel for the defendant contacted counsel for the United States and indicated that the defendant did not intend to cooperate with the Government in its investigation. Soon thereafter, a grand jury returned an indictment charging the defendant with six counts of violations of federal firearms laws arising out of the defendant's activities on November 23, 1984 and November 26, 1985. On the morning of January 16, 1986, the defendant was located in Utica driving the same car he had been driving on November 26, 1985. The defendant was then pulled over and arrested by Agent Bleyman and a representative of the Oneida County District Attorney's Office. At the time of the arrest, the defendant's car was seized and impounded. Later that day, the car was searched and a clip containing ammunition for the Charter Arms rifle previously surrendered by the defendant was discovered.

By the present motion, the defendant is seeking to suppress the statement he signed on November 26, 1985, the weapons he surrendered on that date, and the ammunition obtained from his car on January 16, 1986. The defendant claims that the evidence obtained on November 26, 1985, was obtained in violation of the defendant's rights under the Fourth, Fifth and Sixth Amendments to the United States Constitution. Specifically, the defendant claims that he never received a *Miranda* warning prior to the interview of November 26, 1985 and that he did not voluntarily agree to sign the written statement or to permit a search of his vehicle. The defendant further claims that the ammunition obtained from his car on the date of his arrest is "fruit of the poisonous tree" in that it was obtained as a direct result of the unconstitutional activities of the Treasury agents on November 26, 1985. Accordingly, the

defendant maintains that this evidence should also be suppressed.

## DISCUSSION

 It is well settled that a person is entitled to be advised of the rights provided under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), only when the person is subjected to "custodial interrogation." Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 444, 86 S.Ct. at 1612. The mere fact that questioning takes place in a "coercive environment" does not automatically trigger the requirement that a *Miranda* warning be given. *See California v. Beheler*, 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983); *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). Moreover, the fact that an individual is the "focus" of a criminal investigation is not sufficient, in and of itself, to invoke *Miranda*'s protections. *See Beckwith v. United States*, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976). In each case, "the ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *Beheler*, 463 U.S. at 1125, 103 S.Ct. at 3520 (quoting *Mathiason*, 429 U.S. at 495, 97 S.Ct. at 714.)

 In the present case, the defendant was not "in custody" withinthe meaning of *Miranda* and its progeny. The defendant has admitted that he was never told that he was under arrest. Moreover, the defend-

ant's professed belief that he was not free to leave the motel despite the agents' representations to the contrary was not justified under the circumstances. *Cf. Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 3152, 82 L.Ed.2d 317 (1984) ("the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation"); *United States v. Hall*, 421 F.2d 540, 544–45 (2d Cir.1969), *cert. denied*, 397 U.S. 990, 90 S.Ct. 1123, 25 L.Ed.2d 398 (1970). When the defendant was invited to accompany the agents to the motel, he voluntarily agreed to follow. While at the motel, he was treated courteously and was never threatened with arrest if he refused to cooperate.[4] The defendant was given coffee and cigarettes, was permitted to telephone his wife, and freely left at the end of the interview. Under these circumstances, it was not reasonable for the defendant to believe that he could not leave the motel whenever he wanted to leave.

This is not to say that the defendant did not feel some coercion during the interview. "Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime." *Mathiason*, 429 U.S. at 495, 97 S.Ct. at 714. Unless the defendant was "in custody", however, he was not entitled to be advised of his rights under *Miranda*. Accordingly, the agents' failure to advise the defendant of his rights does not require the suppression of the evidence obtained during and as a result of the interview of the defendant.

---

**4.** The defendant testified that after the agents requested his assistance and after he reviewed Agent Bleyman's case file, he requested to see an attorney. He further testified that the agents told him that if he wanted to see an attorney, they would take him to Syracuse, New York to see a Government attorney and would hold him for two days over the Thanksgiving holiday before they would permit him to see his own attorney. Agent Bleyman testified that he informed the defendant at the outset of the interview that if the defendant wanted to see an attorney, the agents were not interested in his

cooperation. This Court finds Agent Bleyman's testimony more plausible in this regard. Moreover, even assuming that the defendant's testimony accurately reflects statements of the agents, the defendant nevertheless had no Sixth Amendment right to counsel because adversarial proceedings had not yet been commenced against the defendant nor was the defendant "in custody". *See Michigan v. Jackson*, — U.S. —, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986); *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977).

Nevertheless, this does not end this Court's inquiry. The defendant also claims that he did not voluntarily sign the statement prepared by the agents or consent to the "search" of his car. When such a claim is raised, even when the defendant was questioned in a non-custodial setting, it is incumbent upon the court to determine from the totality of the circumstances whether the defendant's will was overborne and his capacity for self-determination impaired. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 226–27, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973). In making this determination, the court may consider "the youth of the accused, ... his lack of education, ... or his low intelligence, ... the lack of any advice to the accused of his constitutional rights, ... the length of detention, ... the repeated and prolonged nature of the questioning, ... and the use of physical punishment such as the deprivation of food or sleep...." *Id.* at 227, 93 S.Ct. at 2047 (citations and footnote omitted). The burden is upon the Government to prove the voluntariness of the defendant's actions. *See Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1323, 75 L.Ed.2d 229 (1983).

In this case, the United States has sustained its burden of demonstrating the voluntariness of the defendant's actions. The defendant is a mature individual who appears to possess average intelligence. He has, by his own admission, had frequent encounters with law enforcement personnel. He was and is aware of his constitutional rights, particularly his right to remain silent, although he was not advised of his rights by the agents on the date of the interview. In short, the defendant does not appear to be a person whose will would easily be overborne by law enforcement personnel.

In addition, the defendant was not questioned in a hostile environment nor was he subjected to rigorous interrogation. As noted previously, the agents treated the defendant courteously and were attentive to his needs. The entire interview lasted approximately two and one-half hours but it appears that the defendant agreed to cooperate with the agents shortly after arriving at the motel and being told of the evidence against him. It appears that a substantial portion of the interview was devoted to the agents' preparation of a statement for the defendant and the defendant's review of the statement prior to signing. After signing the statement, the defendant was asked whether he had any weapons in his possession. The defendant was quick to reply and without hesitation agreed to surrender the weapons in his car. All of these facts point to the conclusion that the defendant freely chose to cooperate with the agents.

Certainly the defendant was faced with a difficult choice. He knew that the agents had sufficient evidence to arrest him that day but admits that he was never told he was under arrest or would be arrested if he refused to cooperate. While there was a measure of coercion present in the agents' offer of leniency to the defendant in exchange for his cooperation, the pressure exerted was not immediate. Thus, having considered this fact, as well as all of the other circumstances surrounding the interview of the defendant, this Court finds that the defendant voluntarily signed the statement prepared by the agents and freely surrendered the weapons in his car. Moreover, the Court further finds that the ammunition clip recovered from the defendant's car on the date of his arrest is not "tainted" because there was no violation of the defendant's rights under the Fourth and Fifth Amendments on the date of the interview.

## CONCLUSION

On the basis of the foregoing, the defendant's motion to suppress is denied in its entirety.

IT IS SO ORDERED.