**UNITED STATES of America, Appellee,**

v.

**Dennis J. GUARNO,
Defendant-Appellant.**

**No. 554, Docket 86–1284.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 8, 1986.

Decided May 13, 1987.

---

Frank Policelli, Utica, N.Y., for defendant-appellant.

Joseph A. Pavone, Asst. U.S. Atty. (Frederick J. Scullin, Jr., U.S. Atty., N.D.N.Y., Syracuse, N.Y., of counsel), for appellee.

Before OAKES, CARDAMONE, and WINTER, Circuit Judges.

WINTER, Circuit Judge:

Dennis J. Guarno appeals from his conviction in the Northern District of New York on three counts of possession of unregistered firearms in violation of 26 U.S.C. § 5861(d), two counts of receipt of firearms by a convicted felon in violation of 18 U.S.C. § 922(h), and one count of transferring a firearm without the approval of the Secretary of the Treasury in violation of 26 U.S.C. § 5861(e). Guarno challenges the admission at trial of a confession contained in a cooperation agreement he signed before his arrest and of certain weapons, ammunition, and an ammunition clip. We affirm.

## BACKGROUND

On November 23, 1984, Guarno met Michael Andrello in the parking lot of a Holiday Inn in New Hartford, New York. During this meeting, Guarno gave Andrello a Beretta .22 caliber semi-automatic pistol and a suitable silencer. Unfortunately for Guarno, Andrello was a confidential informant for the Oneida County Violent Crime Task Force, and the meeting was thoroughly monitored by means of physical surveillance, audio and visual electronic recording, and still photography.

Three days later, Guarno was stopped while driving his car in Utica, New York, by two special agents of the federal Bureau of Alcohol, Tobacco and Firearms.

They identified themselves to Guarno and asked to speak with him privately in a room at a local motel. Guarno agreed and followed the agents to the motel in his own car.

At the motel, the agents revealed to Guarno the very extensive evidence of his meeting with Andrello and explained that he could face imprisonment for as long as fifteen years as a result of the transaction. They promised that Guarno would be allowed to plead guilty to a lesser charge if he agreed to assist in an investigation of individuals suspected of violating the federal firearms laws.

The agents informed Guarno during this discussion that he was not under arrest and that he was free to consult a lawyer or to leave the motel room at any time. They also stated, however, that they would no longer be interested in his cooperation if he chose to discuss the matter with a lawyer. At no time during the meeting did Guarno express any desire to leave or to obtain legal counsel.

After considering the offer for about ten minutes, Guarno agreed to assist in the investigation. He then signed a cooperation agreement in which he admitted, *inter alia,* to having transferred the Beretta pistol and silencer to Andrello.

In response to questioning, Guarno indicated that he had weapons in his car and agreed to turn them over to the agents. These included a Charter Arms .22 caliber sawed-off rifle and suitable silencer attached to the rifle, and a Ruger .22 caliber semi-automatic pistol. The agents informed Guarno that he would not face additional charges as a result of his possession of these weapons so long as he honored the cooperation agreement.

After meeting with the agents, Guarno sought advice from an attorney. His counsel then informed the government that Guarno had changed his mind and would no longer assist in the investigation. Guarno was subsequently indicted on six counts of violation of the federal firearms laws based on his transfer of the Beretta pistol, and his possession of the weapons surrendered at the motel. Guarno was arrested on January 16, 1986. A search of the car he was driving at the time revealed ammunition and an ammunition clip suitable for the Charter Arms rifle.

The district court denied Guarno's motion to suppress, 642 F.Supp. 139, *inter alia,* the confession in the cooperation agreement, the firearms surrendered at the motel, and the ammunition clip and ammunition seized from his car when he was arrested. After a two-day non-jury trial, Guarno was found guilty on all six counts of the indictment. He was sentenced to concurrent terms of imprisonment of five years on each count.

## DISCUSSION

Guarno first contends that his confession was involuntary. We have stated that "the test of voluntariness [of a confession] is whether an examination of all the circumstances discloses that the conduct of 'law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined.'" *United States v. Ferrara,* 377 F.2d 16, 17 (2d Cir.) (quoting *Rogers v. Richmond,* 365 U.S. 534, 544, 81 S.Ct. 735, 741, 5 L.Ed.2d 760 (1961)), *cert. denied,* 389 U.S. 908, 88 S.Ct. 225, 19 L.Ed.2d 225 (1967); *see also Schneckloth v. Bustamonte,* 412 U.S. 218, 225–26, 93 S.Ct. 2041, 2046–47, 36 L.Ed.2d 854 (1973). Circumstances that support a finding of involuntariness may include "the youth of the accused, his lack of education, or his low intelligence, the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as deprivation of food or sleep." *Schneckloth,* 412 U.S. at 226, 93 S.Ct. at 2047 (citations and footnote omitted). A district court's factual findings with respect to such circumstances are not to be set aside unless clearly erroneous. *United States v. Ashby,* 771 F.2d 392, 395 (8th Cir.1985); *United States v. Wilkins,* 659 F.2d 769, 775 (7th Cir.), *cert. denied,* 454 U.S. 1102, 102 S.Ct. 68, 70 L.Ed.2d 646 (1981); *cf. United States v. Puglisi,* 790 F.2d 240, 243 (2d Cir.) (per

curiam) (applying similar standard of review to consent search), *cert. denied*, —— U.S. ——, 107 S.Ct. 106, 93 L.Ed.2d 55 (1986).

■ In weighing the factors enumerated in *Schneckloth*, the district court found that Guarno "is a mature individual who appears to possess average intelligence." Noting Guarno's "frequent encounters with law enforcement personnel" prior to the encounter that gave rise to the confession, the court further found that Guarno was "aware of his constitutional rights, particularly his right to remain silent, although he was not advised of his rights by the agents on the date of the interview." In addition, the court found that Guarno had neither been "questioned in a hostile environment nor ... subjected to rigorous interrogation." The court found instead that "the agents treated [Guarno] courteously" and that he agreed to cooperate shortly after arriving at the hotel, the interview lasting "approximately two and one-half hours." Accordingly, the court concluded that, "[w]hile there was a measure of coercion present in the agents' offer of leniency to [Guarno] in exchange for his cooperation," his confession was voluntary in light of all of the relevant circumstances. These findings are not clearly erroneous.

■ We have previously held that a confession is not involuntary merely because the suspect was promised leniency if he cooperated with law enforcement officials. *See, e.g., United States v. Pomares*, 499 F.2d 1220, 1222 (2d Cir.), *cert. denied*, 419 U.S. 1032, 95 S.Ct. 514, 42 L.Ed.2d 307 (1974); *United States v. Ferrara*, 377 F.2d at 17–18. So long as the characteristics of the suspect and the conduct of the law enforcement officials do not otherwise suggest that the suspect could not freely and independently decide whether to cooperate or remain silent, a confession made pursuant to a cooperation agreement is not the product of coercion. A confession contained in a cooperation agreement is no less voluntary because the officers state, before they obtain the confession, that they will withdraw the offer of leniency if the sus-

pect consults a lawyer. We note in this regard that law enforcement officials have legitimate reasons for protecting the secrecy of ongoing investigations and the identities of the targets of those investigations.

We do observe, however, that the instant case involves a suspect confronted by overwhelming evidence of guilt when the cooperation agreement was offered. Were the evidence more ambiguous, an issue might arise as to whether Guarno had been tricked into making an uncounselled confession. We add this note as a caution to be considered by the government before seeking to introduce confessions contained in cooperation agreements where a defendant may claim he was misled as to how much evidence existed against him. No such issue arises in the present case, however, where Guarno faced considerable eyewitness testimony, as well as audio-visual recordings of the relevant events.

■ In sum, Guarno's confession of November 26, 1984, was voluntarily given. We conclude for similar reasons that Guarno voluntarily surrendered to federal agents the firearms that he removed from his car on that date. *See Schneckloth*, 412 U.S. at 223–27, 93 S.Ct. at 2045–48 (similar test of voluntariness applies to confession and consent search); *Puglisi*, 790 F.2d at 243 (applying *Schneckloth* analysis in consent search context).

Guarno also contends that his confession should have been suppressed because he was not first given the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966). A suspect is entitled to receive *Miranda* warnings, however, only "after [he] has been taken into custody or otherwise deprived of his freedom of action in [a] significant way." *Id.* at 444, 86 S.Ct. at 1612; *see also Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977) (per curiam) ("*Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.' "). In considering what constitutes "custody" sufficient to trigger the need for *Miranda* warnings, we have held that "in the absence of actual

arrest something must be said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates that they would not have heeded a request to depart or to allow the suspect to do so." *United States v. Hall,* 421 F.2d 540, 545 (2d Cir. 1969), *cert. denied,* 397 U.S. 990, 90 S.Ct. 1123, 25 L.Ed.2d 398 (1970). A district court's findings as to whether a confession was given in a custodial setting must be upheld unless clearly erroneous. *United States v. Ross,* 719 F.2d 615, 621 (2d Cir. 1983).

 It is undisputed in the instant case that Guarno was not placed under arrest at the motel. The district court also found that the agents did not threaten Guarno with arrest if he refused to cooperate. Moreover, the federal agents did nothing to suggest that "they would not have heeded a request [by Guarno] to depart or to allow [him] to do so." *United States v. Hall,* 421 F.2d at 545. Indeed, they told Guarno that he was free to leave the motel room whenever he wished to do so. Guarno therefore was not "in custody" or otherwise deprived of his freedom of action to an extent requiring the administration of *Miranda* warnings.

Finally, because the confession and firearms were properly obtained from Guarno at the motel, the district court correctly declined to suppress derivative evidence obtained thereafter as the fruit of a poisonous tree.

We affirm.