**UNITED STATES of America, Appellee,**

v.

**Karamo B. KABA, Defendant–Appellant.**

**No. 1267, Docket 92–1705.**

United States Court of Appeals, Second Circuit.

Submitted March 17, 1993.

Decided July 15, 1993.

Joshua W. Nesbitt, Asst. U.S. Atty. (Gary L. Sharpe, U.S. Atty., N.D. New York, of counsel), for appellee.

Christopher P. Rutnik, Albany, NY, for defendant-appellant.

Before: ALTIMARI and WALKER, Circuit Judges, and LASKER, District Judge.*

WALKER, Circuit Judge:

Defendant–Appellant Karamo Kaba appeals from his conviction for importation and possession of heroin after a jury trial before the United States District Court for the Northern District of New York (Thomas J. McAvoy, *Judge*). After Kaba testified at trial, the district court permitted the government to cross-examine him about statements he allegedly made to government agents and then to introduce the statements on rebuttal over Kaba's objection that they were coerced. The jury found Kaba guilty of importing heroin, in violation of 21 U.S.C. §§ 952(a), 960(b)(2)(A), and 18 U.S.C. § 2, and possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Kaba argues that the statements were involuntary and should not have been admitted. He also contends that the district court erred in failing to hold a hearing to determine whether the statements were voluntary pursuant to *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), and 18 U.S.C. § 3501, which codified *Jackson v. Denno*. Because we find that under the circumstances of this case Kaba did have a fair hearing on the issue of voluntariness, and that the district court did not commit clear error in finding the statements to be voluntary, we affirm.

---

* Hon. Morris E. Lasker, United States District Court for the Southern District of New York, sitting by designation.

## BACKGROUND

On June 8, 1992, Kaba arrived at the Champlain, New York Port of Entry from Canada on a bus to New York City and was examined by a Customs Inspector. After a computer check revealed that Kaba might be wanted in Kenya on narcotics trafficking charges, another Customs Inspector, Rick Martinez, conducted a more thorough examination. Upon opening a black briefcase that Kaba had in his possession, Martinez discovered a bulge in the sides of the inside of the briefcase. He called in Inspector Danny Dion, who inserted a probe into the area of the bulge and extracted a light-brown substance. The two Inspectors took Kaba to a search room, where Dion cut the sides of the inside of the briefcase open and found several plastic bags also containing a light-brown substance. Upon a field test, this substance tested positive for heroin. During this time, Kaba spoke to the Inspectors in English, although Martinez testified at trial that Kaba did not speak the language perfectly. Kaba told Martinez several times that he could not read or write in any language.

The Inspectors arrested Kaba and strip-searched him. They then took him to the Customs office and handcuffed him to a chair. After Inspector Martinez read Kaba his rights as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1964), Kaba indicated that he did not understand what was read to him. At some point after Martinez read him his rights, Kaba asked Inspector Dion for permission to telephone his attorney.

The Inspectors called in Special Agent Mark Garrend. After Agent Garrend arrived at the scene, he too read Kaba his *Miranda* rights and then, unaware of Kaba's earlier request to call his attorney, proceeded to take statements from Kaba. According to Garrend, Kaba told him that he did not know anything about the briefcase and that someone must have switched briefcases with him in Zurich, Switzerland. When Garrend told Kaba that he did not believe him and could not help him if he was not honest, Kaba then changed his story, saying that he was given $10,000 in Nairobi, Kenya to take the briefcase into the United States. Kaba changed his story a third time, saying that after he arrived in Montreal from Switzerland, a man gave him the briefcase.

Because Garrend, unwittingly, took these statements after Kaba asked to call his attorney, the government did not attempt to introduce Kaba's statements in its direct case.

At trial, Kaba took the stand. He testified extensively about the circumstances of his arrest and the things he said to various customs officers and agents. According to his testimony, the customs officers asked him if he had luggage, and he complained to them that they were only asking him this because he was black. He testified that he showed them his only two bags. Then, according to Kaba, the officers showed him a black briefcase, which Kaba said was not his, and told Kaba that he had to take it. He claims that when he refused, an officer told him that he would beat him if he did not take it. Kaba testified that the officer pushed him in the side, and then arrested him and searched him. He claims that he was subjected to racial slurs during this episode. Kaba testified that the agents told him that they would pay him $10,000 if he would take the bag and deliver it to any Nigerian drug dealers that he knew, but if he did not cooperate, he would go to jail.

During cross-examination, the government began to ask Kaba specific questions as to Garrend's account of what Kaba told him. Kaba's attorney objected, arguing that these statements were coerced. Kaba's attorney stated: "I think the facts of the trial have laid a sufficient basis for the lack of understanding of the English language and his testimony here as to coercion that the agents put on him. It creates an aura of psychological pressure which has been held to be classic coercion. On that basis, we ask they be precluded from inquiring on those statements." (A 99–100). The court allowed the questioning to continue, ruling "I don't see any evidence that any statements he made were coerced from him. He told his story and chose to say what he said."

When questioned on cross-examination about what he told Agent Garrend, Kaba denied telling Garrend that his bag must

have been switched in Switzerland, denied saying that he had received $10,000 for bringing the briefcase into the United States, and denied telling Garrend that he received the bag from a man in Montreal when he arrived from Switzerland.

In rebuttal, the government called Agent Garrend to the stand and elicited the statements Kaba made to him. The defense repeated its objection and moved for a mistrial, and the court again overruled the objection and denied the motion for a mistrial.

Following his conviction, and the district court's denial of his new trial motion, Kaba appealed. He claims error by the district court in permitting the statements to be used against him on cross-examination and as rebuttal evidence without a hearing to determine whether they had been coerced. He also claims that the district court committed error in finding that the statements were voluntary.

## DISCUSSION

■ While statements of a defendant taken in violation of the prophylactic rule set forth in *Miranda* may not be introduced in the government's case-in-chief, a *Miranda* violation alone does not prevent the use of such statements for impeachment. *Mincey v. Arizona*, 437 U.S. 385, 397–398, 98 S.Ct. 2408, 2416–2417, 57 L.Ed.2d 290 (1978). However, a coerced or otherwise involuntary statement may never be used for any purpose; "*[A]ny* criminal trial use against a defendant of his *involuntary* statement is a denial of due process of law...." *Id.* at 398, 98 S.Ct. at 2416 (emphasis in original).

In *Jackson v. Denno*, the Supreme Court held that a defendant objecting to the admission of a confession on voluntariness grounds is entitled "to have a fair hearing and a reliable determination on the issue of voluntariness." 378 U.S. at 377, 84 S.Ct. at 1781. *Jackson v. Denno*'s requirement that a court hold a fair hearing on voluntariness is codified in 18 U.S.C. § 3501, which requires that before a confession may be received in evidence, "the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness." § 3501(a).

Kaba argues that, upon his objection to the use of the statements, the district court should have held a hearing on the issue of voluntariness pursuant to *Jackson v. Denno* and 18 U.S.C. § 3501. Not infrequently during a trial, when a defendant has objected to the use of a confession on voluntariness grounds, a court will find it necessary to adjourn the trial and hold a hearing, taking whatever evidence the court needs to decide the voluntariness issue. *See, e.g., Self v. Collins*, 973 F.2d 1198, 1201 (5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1613, 123 L.Ed.2d 173 (1993); *Doby v. South Carolina Dept. of Corrections*, 741 F.2d 76, 78 (4th Cir.1984), *cert. denied,* 471 U.S. 1107, 105 S.Ct. 2343, 85 L.Ed.2d 858 (1985). But a separate hearing is only necessary when there is additional evidence for the court to consider.

■ Here, Kaba expressly based his objection on facts that already had been presented to the court. Kaba did not ask for a hearing to proffer additional facts in support of the objection to the use of the statements, nor was there any suggestion by counsel that such additional facts existed. By the time the objection was made, Kaba had already testified fully as to the allegedly coercive atmosphere surrounding his arrest and questioning, and the court had observed his difficulty with the English language first-hand.

Of course, it is possible that there were other facts that could have helped the district court in its voluntariness determination. While we think the better practice would have been for the court to ask the defense at sidebar whether there was any additional evidence that would help the court in its determination, the district court committed no error here. Substantial facts going to the issue of voluntariness already were before the court and Kaba expressly grounded his suppression motion on these facts. Defense counsel did not ask for a hearing or otherwise indicate the existence of additional facts which would have led the court to think one was necessary. In light of these factors, we hold that Kaba had a "fair hearing" sufficient to allow the court to make a "reliable determination" of voluntariness, and under the circumstances there was no constitutional or

statutory requirement for the court to hold a separate hearing *sua sponte.* In this regard, this case bears a similarity to *United States v. Oliver,* 626 F.2d 254, 260 (2d Cir.1980), where we found no abuse of discretion when the district court refused during trial to re-open a suppression hearing to determine voluntariness since the facts as to defendant's intelligence, literacy, and drug use had been explored at a suppression hearing held shortly after his indictment, the district court had defendant's written statement before it, and the defendant did not offer any additional material facts.

 Defendant also challenges the district court's finding that the statements were voluntary. In evaluating the voluntariness of confessions, we look at the totality of the circumstances in which they were given to determine whether the government agents' conduct "was such as to overbear [a defendant's] will to resist and bring about confessions not freely self-determined." *United States v. Guarno,* 819 F.2d 28, 30 (2d Cir. 1987) (quoting *Rogers v. Richmond,* 365 U.S. 534, 544, 81 S.Ct. 735, 741, 5 L.Ed.2d 760 (1961)); *see also Arizona v..Fulminante,* —— U.S. ——, ———-——, 111 S.Ct. 1246, 1251- 53, 113 L.Ed.2d 302 (1991); *cf. Schneckloth v. Bustamonte,* 412 U.S. 218, 223-27, 93 S.Ct. 2041, 2045-48, 36 L.Ed.2d 854 (1973) (summarizing factors to be used in determining voluntariness of confessions, and applying same totality-of-the-circumstances test to voluntariness of consent to search). We will overturn a district court's findings of fact as to the circumstances surrounding a confession only if clearly erroneous. *Guarno,* 819 F.2d at 30.

 It is plain that the district court found to be incredible Kaba's testimony that he was beaten, subjected to racial slurs, forced to take the briefcase, and offered $10,000 by Customs Officers to deliver it to drug dealers. We see no basis for disturbing this conclusion, which was peculiarly within the province of the district court to decide. With Kaba's testimony discredited, what remains is the description of the arrest and questioning provided by Agent Garrend and Inspector Martinez, since Kaba proffered no other evidence at trial to support his story. Since

their accounts do not support a conclusion that the statements were coerced, and our review of the record indicates that Kaba's understanding of English was not so deficient that he did not understand what he was saying or being asked during Garrend's questioning, the district court's voluntariness finding was not clearly erroneous.

The judgment of the district court is hereby affirmed.