**Lucia GARDINER, Individually and as the Natural Parent of Her Infant Child, Jacqueline Gardiner, Plaintiff,**

v.

**INCORPORATED VILLAGE OF ENDICOTT, Detective N.P. DiNunzio, Individually and in His Official Capacity; Lieutenant G. O'Neill, Individually and in His Official Capacity, Defendants.**

No. 91–CV–751.

United States District Court, N.D. New York.

Nov. 26, 1993.

---

Ronald R. Benjamin, Binghamton, NY, for plaintiffs.

Sugarman, Wallace, Manheim & Schoenwald, Syracuse, NY (James G. Stevens, Jr. of counsel), for defendants.

## MEMORANDUM, DECISION & ORDER

McAVOY, Chief Judge.

### I. BACKGROUND

This case stems from an incident on October 11, 1990 in which the Endicott Police brought Jacqueline Gardiner, then a seventh grade student at the Union–Endicott Central School District's Jennie F. Snapp Middle School, to the Endicott Police Station and subsequently brought her to Binghamton General Hospital for medical examination. A trial in this case was commenced on July 23, 1993 and included exploration of a claim by Lucia Gardiner, Jacqueline Gardiner's mother, that Lucia Gardiner's Fourth Amendment rights were violated by her appearance and stay at the Endicott Police Station on October 11, 1990. On July 26, 1993 the court granted the defendants' motion pursuant to Fed.R.Civ.P. 50(a) for judgment as a matter of law, ruling that Lucia Gardiner had not been seized, and thus no constitutional violation had occurred.

The plaintiffs now make a timely motion for a new trial pursuant to Fed.R.Civ.P. 59(a) on two grounds: first, that it was not proper for the court to grant judgment as a matter of law on the issue of whether Lucia Gardiner went to and stayed at the Endicott Police Station voluntarily, and second, that is was not proper to grant judgment as a matter of law on the issue of qualified immunity for the defendant police officers.

In regard to Lucia Gardiner's arrival and stay at the police station, the plaintiffs submit that because her daughter was at the police station, and she had been informed of this fact, it leaves a question of fact as to whether Lucia Gardiner's appearance at the police station was truly voluntary. Plaintiffs suggest that a mother finding that her child had been taken to a police station could constructively compel the mother to go to the station, and thus the question of the voluntariness of the mother's presence at the police station should be left to the jury. The plaintiffs also assert that the court could not properly resolve any credibility issues that existed with respect to whether Lucia Gardiner was testifying truthfully when she indicated that she did not consent to remaining at the police station during the time her daughter was there. Plaintiffs suggest that Lucia Gardiner's "tearful testimony" at trial makes it clear that Lucia Gardiner did not act voluntarily. (Pltf. memo at 2).

In relation to the issue of qualified immunity for the police officers, the plaintiffs explain that Lucia Gardiner testified at trial that she did not consent to having her daughter taken to the police station. The plaintiffs also note that the trial testimony of Jacqueline Casazza, Vice Principal of the Jennie F. Snapp School, directly conflicted with the testimony of Lucia Gardiner, but nevertheless, the court accepted Ms. Casazza's testimony as true. Ms. Casazza testified at trial that she told the police that she had obtained Lucia Gardiner's consent to bring Jacqueline Gardiner to the police station. The plaintiffs assert that because the testimony of these two witnesses was in conflict, the question of the good faith of the police officers should have been submitted to the jury rather than being decided by the court. It is upon these grounds that the plaintiff now seeks a new trial.

### II. DISCUSSION

Fed.R.Civ.P. 50(a)(1) allows a court to grant a judgment as a matter of law against

a party on any claim if, during a jury trial, that party "has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue." If the judgment as a matter of law is granted on a particular issue, the party against whom judgment is granted may, within 10 days of the judgment, file a motion for a new trial on the issue. Fed.R.Civ.P. 59.

In deciding a motion for judgment as a matter of law, the court must determine whether the evidence points so strongly in favor of one party that a reasonable jury could not possibly find in favor of the other party. *Fane v. Zimmer, Inc.,* 927 F.2d 124, 128 (2d Cir.1991). Although judgment as a matter of law is inappropriate when a question exists as to whether reasonable persons might reach different conclusions based on the evidence presented, a "mere scintilla of evidence is insufficient to present a question for the jury." *Epoch Producing Corp. v. Killiam Shows, Inc.,* 522 F.2d 737, 743 (2d Cir.1975) (quoting *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969)). The determination that a reasonable jury could only reach one conclusion must be made without weighing the credibility of the testimony of the witnesses involved. *Epoch Producing Corp.* 522 F.2d at 742.

In this case, the above-captioned defendants were granted judgment as a matter of law against the plaintiffs on the issue of whether Lucia Gardiner's Fourth Amendment right to be free from unreasonable search and seizure had been violated by the defendants. The court found that no reasonable jury could find that Lucia Gardiner's Fourth Amendment rights had been violated by her appearance and stay at the Endicott Police Station after being notified that her daughter was there.

The Fourth Amendment grants "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. In determining whether a "seizure" within the meaning of the Fourth Amendment has occurred, the court must examine all the circumstances surrounding the event and decide whether a reasonable person would have believed that she was not free to leave. *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980). Only when a reasonable person would feel restrained by physical force or a show of authority is that person "seized" for purposes of the Fourth Amendment. *Mendenhall* 446 U.S. at 554, 100 S.Ct. at 1877. Actions by the police such as physical touching of the person, the display of a weapon, or the words and tone of the police officer's speech can indicate that of a show of authority, effecting a seizure, has taken place. *United States v. LaPorta,* 807 F.Supp. 24, 26 (W.D.N.Y.1992).

In this case, the trial testimony clearly showed that Lucia Gardiner had not been seized by the Endicott Police. She did not offer any testimony expressing that she had been physically touched by the police, that a weapon had been displayed to her, or that any officer used language or a tone of voice indicating a show of authority. According to her trial testimony, Lucia Gardiner received a phone call from the Endicott Police explaining that her daughter Jacqueline was at the police station and asking her to come to the station regarding her daughter. Lucia Gardiner went to the station without police accompaniment. After being questioned by the police, she sat in a hallway with her other children awaiting her daughter Jacqueline. Lucia was not handcuffed, accused of any crime, restrained in a particular room, or placed under arrest.

Although the police did not tell her that she was free to leave, she did not ask to leave or attempt to exit the police station. Regardless, the failure of police officers to tell a person that she is free to leave does not, on its own, constitute a seizure. *See United States v. Steele,* 782 F.Supp. 1301, 1311 (S.D.Ind.1992) (stating that "although an officer's statement that the person is free to leave makes matters clearer, an encounter may be consensual even though the officer does not communicate this to the person"). Because of this lack of evidence that Lucia Gardiner was seized by the police, the court was correct in deciding to grant judgment as

a matter of law against the plaintiffs on the claim of Fourth Amendment violations.

■ The second issue presented by the plaintiffs in furtherance of their argument for a new trial is that the court improperly granted judgment as a matter of law against Jacqueline Gardiner because there was still an issue of fact as to whether the conduct of the police officers was protected by qualified immunity. At trial, Lucia Gardiner testified that she did not consent to having her daughter taken to the police station. Officer DiNunzio testified that Jacqueline Cazassa, Vice Principal of the Jennie F. Snapp School, had told him that Lucia Gardiner had given permission to allow the police to take Jacqueline Gardiner to the police station. Jacqueline Casazza also testified that she made this statement to Officer DiNunzio. Based on this testimony it seems clear that the police officers are protected by qualified immunity because they believed in good faith that parental permission to remove Jacqueline from the school had been granted. Regardless of whether Lucia Gardiner actually consented to her daughter's removal to the police station, there is no evidence to show that the police knew of a lack of parental consent, and thus there was no issue for the jury regarding qualified immunity of the officers.

■ The plaintiffs now suggest that a conspiracy existed between Jacqueline Casazza and the defendant police officers to testify at trial that she had informed the officers that Lucia Gardiner had granted permission to allow the police to remove her daughter from school. Plaintiffs do not support this claim with any facts, however, they do rely on *Hampton v. Hanrahan,* 600 F.2d 600, 621 (7th Cir.1979), *rev'd on other grounds,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980) claiming that "even in the absence of direct evidence, a conspiratorial agreement may be found." (Pltf. memo at 3). Although *Hampton* does state that plaintiffs are not required to produce direct evidence of a conspiracy to prove its existence, the case goes on to say that, in the absence of direct evidence, conspiracy may be proven sufficiently through adequate circumstantial evidence. *Hampton* 600 F.2d at 621. In this case, the plaintiffs have simply asserted that

a conspiracy may have existed between the police officers and Jacqueline Casazza, but they offer no evidence, either direct or circumstantial, to support this claim. Based on this bald assertion alone, the court finds no evidence of a conspiracy that would have made it proper to transfer the issue of qualified immunity to the jury. Furthermore, this speculative declaration does not now amount to a sufficient basis on which to reverse the court's previous judgment as a matter of law against the plaintiffs. The court has not been approached with evidence adequate to require a new trial, and thus the plaintiffs motion is denied.

**IT IS SO ORDERED.**